United States District Court
District of Massachusetts

```
                                    )
UNITED STATES OF AMERICA,           )
                                    )
              v.                    )
                                    )   Criminal No.
CARLENS RIGAUD,                     )   06-10385-NMG
              Defendant.            )
                                    )
```

**MEMORANDUM & ORDER**

GORTON, J.

Defendant Carlens Rigaud ("Rigaud") is charged with 1)

conspiracy to distribute and possess with intent to distribute

cocaine base in violation of 21 U.S.C. § 846, 2) two counts of

possession with intent to distribute cocaine base in violation of

21 U.S.C. § 841(a)(1), 3) being a felon in possession of a

firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and

4) possession of a firearm in furtherance of a drug trafficking

crime in violation of 18 U.S.C. § 924(c)(1)(A). Before the Court

is Rigaud's motion to suppress all evidence seized pursuant to a

search warrant allegedly based upon a defective affidavit.

**I.   Factual Background**

On June 9, 2006, agents of the Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF") as well as state and local

authorities executed a search warrant issued by the Malden

District Court at 95 Medford Street in Malden, Massachusetts.

Rigaud and several others were present and arrested at the scene.

The search warrant was based upon the affidavit of Sergeant Kevin Molis ("Molis") of the Malden Police Department. The eight-page document identified a number of sources to support a finding of probable cause to search for drugs and related items at the residence. They included:

1) an elected official who contacted the Malden Police Chief to convey constituent complaints of drug activity at the residence;

2) three anonymous calls to the Malden police describing drug activity at the location: one to its drug hotline, another to the dispatcher and a third to Sergeant Ted Meroski stating that a dozen people per day arrived at the house by car and made brief visits;

3) a report from Detective Richard Connor ("Connor") of the Everett Police Department's Drug Unit that he was familiar with "Little C" (Rigaud's brother and co-defendant) and his connections to cocaine distribution in the area; (the affidavit states that Sergeant George Keralis ("Keralis"), an officer assigned to the Middlesex Drug Task Force, had received information about "Little C" from a reliable confidential source and passed that information on to Connor who showed Molis a phone number for "Little C" which matched one that Molis's own confidential source had given him);

4) a subsequent conversation with Keralis in which Keralis

-2-

confirmed that his information came from a reliable source;

5) two weeks of surveillance at 95 Medford Street during which officers a) observed individuals arriving by car, entering the premises for a very brief period of time, returning to their cars and leaving, b) found that some such vehicles were registered to owners with drug-related charges and c) witnessed counter-surveillance conduct similar to what they had encountered in prior experiences investigating drug cases; and

6) a confidential informant ("CI") identified as Patriot whose identity, address and regular use of illegal narcotics was known to Molis.[1]

Patriot had contacted Molis about a location in Malden from which crack cocaine was being distributed. She described the residence in detail and, based upon her description, Molis was able to identify it as 95 Medford Street. She provided several additional specifics including a) a description of the apartment layout, b) the phone number through which crack cocaine purchases could be arranged (which matched the number that Connor had) and c) physical descriptions of two of the suspects whom she knew as "C" (Rigaud) and "Little C" (his brother). Patriot also reported that she had often observed handguns carried by the individuals distributing drugs in the apartment.

_____

[1]   For confidentiality purposes, the affidavit refers to Patriot as a male. It has since been revealed that Patriot is a female and will be referred to as such here.

-3-

In furtherance of the investigation, from May through June, 2006, Patriot made five controlled purchases of crack cocaine at 95 Medford Street. Molis's affidavit describes the controlled buys as follows:

I, along with the other detectives involved in the investigation met Patriot at a location other than the location where the suspected activity was occurring. It was determined that Patriot was not in possession of cocaine. In our presence Patriot called the phone [number she had provided] and arranged to purchase crack cocaine. Patriot was furnished with sufficient money to purchase crack cocaine. The serial numbers of the buy money were recorded. Police surveillance was established ... [and] Patriot was continuously kept under surveillance as [s]he entered the rear area of 95 Medford Street .... After a very brief period of time, Patriot was observed exiting rear area of 95 Medford Street .... After leaving the area ..., while under continuous surveillance Patriot would be met by a detective who would pick [her] up in an unmarked police vehicle. Patriot would be driven to a private location where I would receive a quantity of packaged crack cocaine that Patriot told me that [s]he had just purchased from inside 95 Medford Street.

Based upon all of the above information as well as his training and experience, Molis believed that there was probable cause to search the location and any persons therein for cocaine and related paraphernalia. He requested authority to enter without knocking and announcing due to the "potential violence and danger" with handguns present and the ease with which occupants might identify approaching law enforcement. A search warrant was issued on June 9, 2006 and executed that same day. Officers seized over 75 bags of crack cocaine, two handguns and various other items.

-4-

In February, 2010, as the government prepared for trial,
Patriot, now identified as Betty Trainor ("Trainor"), admitted
two facts that the government then disclosed to Rigaud.  First,
prior to each of the five controlled buys, she hid $40 of her own
money in her underwear.  During the buys, she used that money to
buy an additional bag of crack cocaine for her personal use which
she then hid inside her vagina.  Neither the $40 nor the hidden
bag of cocaine was found by officers before or after any of the
controlled buys.  Second, Trainor regularly bought and used
cocaine during the time of the controlled buys.

## II.  Procedural History

Rigaud and two co-defendants were indicted in November,
2006.  During the succeeding three years, Rigaud's co-defendants
pled guilty and his case was continued numerous times.  With
trial set for late February, 2010, however, the government's
disclosures that same month prompted Rigaud to file a motion to
suppress.  The government opposed the motion in May, 2010 and the
Court heard oral argument on the motion on July 1, 2010.

## III. Analysis

Rigaud moves to suppress evidence recovered in the June 9,
2006 search because Trainor's recent disclosures illuminate holes
in Molis's affidavit.  In particular, he contends that the five
controlled buys were "negligent, reckless and contrary to
established law enforcement guidelines" and that Molis's

-5-

description of those buys omitted material facts which, if
disclosed, would have resulted in denial of the search warrant.

## A.   Legal Standard

Rigaud's motion is properly analyzed under Franks v.
Delaware, 438 U.S. 154 (1978) and its progeny although he does
not directly cite that case.  The Fourth Amendment's probable
cause requirement implies that probable cause be demonstrated by
truthful statements in an affidavit.  Id. at 165-66.  Thus, where
probable cause is grounded in an affiant's deliberately or
recklessly false statements, the resulting warrant is invalid and
the Fourth Amendment rights of individuals subject to its
execution are violated.  See id. at 171.

There are two prerequisites to a challenge to a search
warrant based upon alleged defects in an affidavit.  First, to be
entitled to a so-called Franks hearing, the defendant must make a
"substantial preliminary showing" that 1) a statement in the
affidavit was knowingly and intentionally false or made with
reckless disregard for the truth, and 2) the falsehood was
necessary to the finding of probable cause.  A material omission
may also trigger a Franks hearing.  E.g., United States v.
Castillo, 287 F.3d 21, 25 (1st Cir. 2002) (citations omitted).
If the defendant establishes the need for such a hearing, he must
then prove both requirements by a preponderance of the evidence
and, if successful, the search warrant will be voided and any

-6-

evidence gathered from it excluded.  Franks, 438 U.S. at 156.

## B.  Application

Because Rigaud attacks the validity of an affidavit on which

a search warrant was based, the Court construes his arguments in

support of suppression as arguments for a Franks hearing.  His

contentions are unpersuasive and his motion will, therefore, be

denied without an evidentiary hearing.

### 1.  Deliberately or Recklessly False Statements or Omissions

Franks imposes requirements on defendants challenging an

affidavit.  The attack must be

more than conclusory and ... supported by more than a
mere desire to cross-examine.  There must be allegations
of deliberate falsehood or of reckless disregard for the
truth, and those allegations must be accompanied by an
offer of proof.

Franks, 438 U.S. at 171.  A reckless disregard for the truth

requires that the affiant

in fact entertained serious doubts as to the truth of the
allegations ... [and] may be inferred from circumstances
evincing obvious reasons to doubt the veracity of the
allegations.

United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002)

(quotation marks and citations omitted).  Allegations of

deliberate falsity or recklessness must only concern the affiant.

Franks, 438 U.S. at 171.

Rigaud identifies the following alleged improprieties in

Molis's affidavit: 1) omitting a statement that he searched

-7-

Trainor before and after the controlled buys was at least reckless because such a search was crucial to a controlled buy and Molis knew or should have known that, 2) the statement that "it was determined that Patriot was not in possession of cocaine" before the buys was "reckless, misleading, and wrong" because it omits details about how that determination was made and 3) omitting the fact that Trainor was using drugs was also incompetent and grossly negligent.

Rigaud focuses on the first alleged omission. In addition to numerous conclusory assertions that the omission was reckless, he offers two specific reasons for labeling it as such. First, citing Commonwealth v. Desper, 643 N.E.2d 1008 (Mass. 1994), he argues that a controlled buy, at a minimum, requires that "the officer search[] the confidential informant to ensure the informant has no drugs on his person". Rigaud contends that the affidavit, although detailing other steps, is silent about whether Patriot was searched before and after each buy and an inference can be drawn that she was not. Because that was a crucial component to a controlled buy, the affidavit's silence was reckless.

Second, he maintains that the failure to search Trainor violates well-established law enforcement procedures. The DEA Manual allegedly mandates a "thorough" search before and after a controlled buy. Molis, Rigaud asserts, must not have "paid any

-8-

attention" in DEA training courses because, if he had, he would have known that a thorough search was necessary. He did not document such thoroughness in his affidavit and his failure to do so was therefore reckless.

The government responds that 1) many of Rigaud's allegations (especially the repeated statement or implication that Trainor was not searched at all) are without evidentiary support and thus incognizable, 2) police are not required to search an CI's underwear and body cavities and thus a failure to disclose that Molis did not do so was immaterial, 3) neither Desper nor the DEA Manual support Rigaud's arguments and 4) allegations about Trainor's drug use are irrelevant.

The government is correct and Rigaud has failed to make a substantial preliminary showing of deliberate or reckless falsities or omissions in the affidavit. First, as the government contends, implications that Trainor was not searched at all are unpersuasive. The only two relevant documents before the Court are 1) the February 4, 2010 letter which states that she was searched before and immediately after the controlled buys and 2) Molis's affidavit which states that "it was determined that Patriot was not in possession of cocaine" before the buys. To be sure, the latter statement is imprecise and unprofessional. It does not clearly state that Trainor was searched and thus is ambiguous, i.e., it could mean that she was simply asked if she

-9-

had any cocaine. The Court finds, however, that, on balance, the common sense reading of the affidavit is that Trainor was searched. See United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996) ("[A c]ourt must examine the affidavit in a practical, common sense fashion, and accord considerable deference to reasonable inferences the issuing magistrate may have drawn ...") (citation and quotations omitted). Rigaud provides nothing to refute such a reading beyond conjecture.

Neither the Desper case nor the DEA Manual supports Rigaud's argument. Desper merely holds that a CI should be searched. The affidavit implies that Trainor was searched and the Desper decision proffers no details as to when, how often or how thoroughly a search must be conducted. The DEA Manual merely provides that a thorough search should be conducted before and after the buy. Because Molis was not even employed by the DEA, the Manual is not binding authority here and, in any event, it does not describe in any detail what is meant by "thorough" and certainly does not require underwear and body cavity searches.

In fact, as the government points out, courts have consistently declined to adopt the position urged by the defendant. They have refused to hold that an underwear or body cavity search is necessary in a controlled buy or that a failure to conduct such a search (and the non-reporting thereof) is reckless. E.g., United States v. Dorsey, No. 05-cr-389-T-23TBM,

-10-

2006 WL 1027106, at *4 (M.D. Fla. Apr. 18, 2006), <u>affirmed</u> 554
F.3d 958 (11th Cir. 2009).

Rigaud's response at oral argument was to attempt to
distinguish each of the cases cited by the government as non-
binding, unpublished or unpersuasive.  To qualify for a <u>Franks</u>
hearing, however, it is the <u>defendant</u> who must make a substantial
preliminary showing of impropriety in the affidavit.  With no
authority holding that Molis was required to search Trainor's
underwear and body cavities, Rigaud cannot establish that Molis's
failure to describe such "shortcomings" in the affidavit was done
recklessly.  Although we now know that Molis missed something,
that does not render his sworn statements about controlled buys
deliberately or recklessly false or misleading.  Rigaud's motion
will, therefore, be denied.

### 2.  Necessary to the Probable Cause Finding

Even if Molis's affidavit contained a deliberate or reckless
falsehood or omission (which it does not), Rigaud would be
required to show that the impropriety was necessary to a
determination of probable cause.  To do so, this Court would have
to decide, after correcting for that impropriety, that the
totality of the circumstances demonstrated an absence of probable
cause.  <u>E.g.</u>, <u>United States</u> v. <u>Hicks</u>, 575 F.3d 130, 138 (1st Cir.
2009).

Rigaud contends that 1) after full disclosure, there was no

-11-

basis for a finding of probable cause based upon the Molis
affidavit and 2) Trainor's dishonesty and current drug use
rendered her information fatally untrustworthy.

His argument is unpersuasive. With respect to the first
prong, Rigaud misses the point. The proper inquiry is not
whether probable cause would have existed if the affidavit had
revealed what Trainor hid going into and returning from the
controlled buys but rather whether probable cause could be found
if the affidavit stated that Molis did not search Trainor's
underwear and body cavities and was generally more explicit about
the searches actually performed. Because courts have declined to
require underwear and body cavity searches in controlled buys
(and defendant cites no authority to the contrary), however, a
magistrate judge surely would not have found the affidavit
fatally defective for explicitly acknowledging a failure to do
what the law does not require.

Moreover, what undeniably occurred at the controlled buys
establishes beyond doubt that a magistrate would not have ignored
those facts in considering the affidavit and would have found
probable cause to warrant a search. The defendant's argument
loses sight of the fact that the buys happened exactly as the
government envisioned at the time. Officers confirmed that
Trainor: 1) did not have drugs on her person when she started, 2)
was given money to buy crack, 3) entered the defendant's

-12-

premises, delivered the money she had been given, received a commensurate quantity of drugs and 4) handed over those drugs to the police. Hindsight reveals the side deal but the fact remains that officers at the time witnessed controlled buys which played out exactly as planned and, on five occasions, resulted in the purchase of drugs at the premises under investigation. Under those circumstances, it is difficult to imagine that a magistrate judge who was told that Trainor had not been searched more thoroughly or more often (or even that she had surreptitiously negotiated side deals) would have set aside the fundamental and compelling evidence of drug trafficking and found no probable cause for the search.

The second prong of Rigaud's argument, i.e., Trainor's untrustworthiness, is also unconvincing because, as the government aptly demonstrates, Trainor's lack of candor was, ultimately, unnecessary to the finding of probable cause. The affidavit provided ample grounds to credit her preliminary statements and to corroborate what she said and did notwithstanding subsequent disclosures of her drug use or undisclosed purchases.

In short, the totality of the circumstances sufficiently demonstrate that Trainor was substantially reliable and that, even had the alleged omissions been included in Molis's affidavit, there was probable cause to issue the search warrant.

-13-

**ORDER**

In accordance with the foregoing, defendant's motion to suppress (Docket No. 87) is **DENIED.**

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated July 7, 2010

-14-